UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TONIA L. DANIELS,                                  )
                                                   )
                    Plaintiff,                     )
                                                   )
v.                                                 )        No. 3:17-CV-46-DCP
                                                   )
NANCY A. BERRYHILL,[1]                             )
Deputy Commissioner for Operations,               )
performing the duties and functions not           )
reserved to the Commissioner of Social Security,  )
                                                   )
                    Defendant.                     )

## <u>MEMORANDUM OPINION</u>

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 9].  Now before the Court is

Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 10 & 11] and

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18].  Tonia

L. Daniels ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the

ALJ"), the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social

Security ("the Commissioner").  For the reasons that follow, the Court will **DENY** Plaintiff's

motion and **GRANT** the Commissioner's motion.

## I.        PROCEDURAL HISTORY

On January 6, 2014, Plaintiff filed an application for disability insurance benefits and

supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court hereby substitutes Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, as the Defendant in this case.

U.S.C. §§ 401 *et seq.*, and 1381 *et seq.*, claiming a period of disability that began on June 1, 2012. [Tr. 192-201]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 145].[2] A hearing was held on November 23, 2015. [Tr. 28-58]. On December 29, 2015, the ALJ found that Plaintiff was not disabled. [Tr. 11-23]. The Appeals Council denied Plaintiff's request for review [Tr. 1-3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on February 10, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.

2. The claimant has not engaged in substantial gainful activity since June 1, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: inflammatory bowel disease; degenerative disc disease; affective disorder; and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1

---

[2] In Defendant's Memorandum in Support of Motion for Summary Judgment, the Commissioner states that there was no reconsideration in this case and that Plaintiff's appeal proceeded directly from initial denial to the ALJ level. [Doc. 18 at 2 n. 2]. The record in this case demonstrates that there was reconsideration and that the Commissioner's statement is in error.

(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except [t]he claimant can lift/carry up to 20 pounds occasionally and 10 pounds frequently.  The claimant can stand, walk, or sit for up to six hours, each in an eight-hour workday.  The claimant can occasionally balance, stoop, kneel, crouch, and climb ramps, stairs, ladders, ropes, or scaffolds.  The claimant can frequently handle, finger, and reach overhead bilaterally.  The claimant is limited to simple and detailed tasks with no more than occasional public contact, with changes introduced gradually and infrequently

6.  The claimant is unable to perform any past relevant work.  (20 CFR 404.1565 and 416.965).

7.  The claimant was born on July 23, 1972 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 13-22].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).  It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits."  *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

On appeal, Plaintiff argues that the ALJ's step two and RFC determinations are not supported by substantial evidence. Plaintiff contends that she has additional impairments that the ALJ should have found severe at step two, and the ALJ's failure to appreciate the severity of these impairments undermines the ALJ's subsequent RFC determination. [Doc. 11 at 13-17]. Plaintiff submits that the RFC determination is additionally flawed because the ALJ did not properly assess the opinions of Plaintiff's treating physician, Robert Moore, M.D., and erroneously deferred to the opinions of the non-examining state agency physicians and psychological consultants. [*Id.* at 17-21]. The Court will individually address each alleged error.

### A. Nonsevere Impairments

Plaintiff submits that the ALJ's failure to find Plaintiff's carpal tunnel syndrome, migraines, and obesity to be severe impairments at step two was error, and that the ALJ's step two error adversely impacted the RFC determination as the ALJ did not properly account for the limiting effects caused by the foregoing alleged severe impairments. [*Id.* at 13-17].

To be found disabled, "the ALJ must find that the claimant has a severe impairment or impairments" at step two. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit[] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The step two determination is "a *de minimis* hurdle" in that "an impairment will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90). Importantly, the diagnosis of an impairment "says nothing about the severity of the condition." *Id.* at 863. Rather, the claimant must "produce or point to *some* evidence that indicates that an alleged impairment impacts his ability to perform basic work activities." *Johnson v. Astrue*, No. 3:09-CV-317, 2010 WL 2803579, at *5 (E.D. Tenn. June 30, 2010), *adopted by*, No. 3:09-CV-317, 2010 WL 2836137 (E.D. Tenn. July 15, 2010) (emphasis in the original).

It is well settled that the ALJ's failure to identify some impairments as "severe" is harmless where the ALJ continues the disability determination and considers both severe and nonsevere impairments at subsequent steps of the sequential evaluation as required by the regulations. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").

In the present case, the ALJ determined at step two that Plaintiff's carpal tunnel syndrome was a medical determinable impairment but was nonsevere. [Tr. 14]. Relying on treatment records from orthopedic surgeon Richard Smith, M.D., the ALJ found Plaintiff's symptoms were "medically managed, and should be amendable to proper control by adherence to recommended medical management and medication compliance." [*Id.*] (citing Tr. 524-35). The ALJ also cited to the lack of aggressive treatment recommended or anticipated as additional evidence that Plaintiff's carpel tunnel was nonsevere. [*Id.*]. Plaintiff contends that the ALJ's proffered reasoning was insufficient because treating physician, Robert Moore, M.D., noted complaints of pain, swelling, and numbness in Plaintiff's hands, a nerve conduction study confirmed the presence of carpal tunnel syndrome, and consultative examiner Jeffrey Uzzle, M.D., found decreased grip strength in Plaintiff's right hand and numbness in all fingers of both hands upon examination. [Doc. 11 at 13-14].

The Court finds that substantial evidence supports the ALJ's determination. Plaintiff's reliance on Dr. Moore's treatment records predate Dr. Smith's December 23, 2013 treatment note in which injections were recommended over surgery. [Tr. 524]. Following injections administered by Dr. Smith, Plaintiff did not return for further treatment, and Dr. Moore's subsequent treatment records contain few complaints or examination findings regarding Plaintiff's carpel tunnel syndrome. [Tr. 498-501, 698-705]. Moreover, despite finding Plaintiff's impairment nonsevere, the ALJ nonetheless considered the effect of Plaintiff's impairment in assessing her RFC. [Tr. 17-19]. The ALJ took into account Plaintiff's testimony that her hands were constantly numb, but the ALJ also considered Dr. Uzzle's opinion and Dr. Moore's examination findings following injections. [Tr. 17-19]. Plaintiff points to Dr. Uzzle's finding of decreased grip strength in the right hand and numbness in all fingers of both hands, but Dr. Uzzle assessed limitations consistent

with Plaintiff's RFC of frequent manipulative restrictions with the exception of reaching overhead. [*Compare* Tr. 16 *with* Tr. 484].

Plaintiff also contends that the ALJ should have found obesity to be a severe impairment. [Doc. 11 at 15]. In this regard, Plaintiff cites to treatment records by Dr. Moore, which document a body mass index in the obese range, and Dr. Uzzle's observation that Plaintiff presented overweight with a truncal obesity pattern. [Doc. 11 at 15]. The ALJ did not explicitly mention obesity at step two or any other subsequent steps of the sequential evaluation. Even so, the Court finds the ALJ did not commit reversible error.

While Social Security Ruling 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002), requires an ALJ to take into consideration the effects obesity may have on a disability claimant, "[i]t is a mischaracterization to suggest that Social Security Ruling 02-1p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006). Social Security Ruling 02-1p cautions that assumptions will not be made "about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." 2002 WL 34686281 at *6. Thus, obesity is evaluated "based on the information in the case record." *Id.*

Here, Plaintiff did not allege at the administrative level that her obesity was a severe impairment, and she did not claim that her weight impacted her functional abilities. Moreover, in assessing Plaintiff's RFC, Dr. Moore did not attribute any of his opined restrictions to Plaintiff's weight. [Tr. 396-98]. Although Dr. Uzzle recognized Plaintiff was obese, it is unclear from his opinion whether he specifically attributed any of his assessed limitations to Plaintiff's weight. [*See* Tr. 480-81]. Therefore, the lack of discussion by the ALJ as to Plaintiff's obesity "likely stems

from the fact that [Plaintiff] failed to present evidence of any functional limitations resulting specifically from her obesity." *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004) (rejecting the plaintiff's contention that the ALJ failed to consider the impact of her obesity).

Nonetheless, to the extent that Plaintiff's weight impacted her ability to perform work-related activities, the ALJ gave great weight to the opinion of non-examining state agency physician Carol Lemeh, M.D., who specifically found that Plaintiff was obese based on the medical evidence of record. [Tr. 104-05]. Therefore, the Court finds that the ALJ properly considered the functional effects of Plaintiff's weight. *See Bledsoe*, 165 F. App'x at 412 ("[T]he ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity."); *see also Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) ("Thus, by utilizing the opinions of these physicians in fashioning Coldiron's RFC, the ALJ incorporated the effect that obesity has on the claimant's ability to work into the RFC he constructed.").

Finally, Plaintiff submits that her migraines are likewise severe, and that Dr. Moore's treatment records regularly noted the presence of migraines as a chronic problem, thereby substantiating Plaintiff's testimony that she suffers a migraine every one-and-a-half to two months, with each migraine lasting one week to 10 days. [Doc. 11 at 15]. To the contrary, the Court finds that Dr. Moore's treatment records actually demonstrate that Plaintiff's migraines are nonsevere. First, the treatment records cited by Plaintiff merely list "Common Migraine (Without Aura)," along with every other condition that Plaintiff has been diagnosed with and/or treated for, under "Active/Other Problems" which says nothing about the severity of Plaintiff's migraine headaches. *See Higgs*, 880 F.2d at 863. To be sure, none of the treatment records cited by Plaintiff notate

complaints or reported symptoms associated with migraines. [Tr. 443. 446, 498]. In fact, Plaintiff

denied experiencing headaches during a majority of her visits with Dr. Moore. [Tr. 431, 439, 443,

446, 498, 698, 702]. Second, Dr. Moore did not assess migraines as an impairment or condition

that limited Plaintiff's functional abilities. [Tr. 398]. Likewise, Plaintiff did not report to Dr.

Uzzle that she suffered from disabling migraines, nor did the non-examining state agency

physicians assess migraine related limitations. [Tr. 67-69, 102-105, 478-81].

In sum, the Court finds that substantial evidence supports the ALJ's step two severity

finding, and that the ALJ properly considered all of Plaintiff's "medically determinable

impairments [that] could reasonably be expected to cause some of the alleged symptoms" reported

by Plaintiff in assessing her RFC. [*See* Tr. 17]. Therefore, Plaintiff's allegations to the contrary

are not well-taken.

### B.    Medical Opinions

Plaintiff also maintains that the ALJ's RFC determination is not supported by substantial

evidence because the ALJ improperly discounted Dr. Moore's opinions and erroneously deferred

to the opinions of the non-examining state agency physicians and psychological consultants.

Dr. Moore completed a "Medical Assessment of Ability to Do Work-Related Activities"

on January 17, 2014, wherein he responded to a variety of multiple choice and short-answer

questions regarding Plaintiff's functional abilities. [Tr. 396-98]. Dr. Moore opined that Plaintiff

had the following limitations in an eight-hour workday: Plaintiff could sit for eight hours but only

four hours at a time, stand for two hours but only one hour at a time, and walk for two hours but

only 15 minutes at a time; she could occasionally lift up to 10 pounds; she could rarely bend, twist,

push or pull; and she could rarely use her hands for fine manipulation and could occasionally reach

above her shoulders, reach in all directions, and grasp. [Tr. 369-97]. Dr. Moore further concluded

that Plaintiff would require unscheduled breaks, would be absent from work more than four times per month, was moderately limited in her ability to concentrate and persist, and was markedly limited in her ability to deal with workplace stress. [Tr. 397-98]. The foregoing limitations were attributed to Plaintiff's ulcerative colitis, generalized anxiety disorder, carpal tunnel syndrome, and generalized pain. [Tr. 398].

Two additional, identical medical source statements were completed by Dr. Moore on March 7, 2014, and July 24, 2014, wherein he opined on Plaintiff's mental limitations. [Tr. 401-02, 496-97]. In March 2014, Dr. Moore concluded that Plaintiff had moderate limitations in memory, concentration, and social functioning which translated into the following limitations: she could remember and carry out simple, one-to-two step instructions, maintain a work routine without inordinate supervision or frequent breaks for stress related reasons, maintain socially appropriate behavior and hygiene, and perform daily living activities. [Tr. 402]. However, she could not respond appropriately to normal stress and routine changes or maintain a work schedule without missing frequently. [*Id.*]. In July 2014, Dr. Moore indicated that Plaintiff's anxiety had improved with medication. [Tr. 496]. Her memory was now rated as adequate and her ability to concentrate and socially interact remained moderately impaired. [Tr. 496]. As to Plaintiff's ability to perform the same work-related activities noted above, Dr. Moore did not provide responses. [Tr. 497].

The ALJ's decision considered Dr. Moore's opinions, noting that Dr. Moore had essentially limited Plaintiff to sedentary exertional work with greater postural and manipulative limitations. [Tr. 20]. The ALJ further observed that Dr. Moore found Plaintiff markedly limited in her ability to deal with work stress, but that Dr. Moore had subsequently indicated in his July 2014 opinion that Plaintiff improved with treatment. [*Id.*]. The ALJ then concluded, "In light of the claimant's

course of treatment, the undersigned gives little weight to the opinion of Dr. Moore to the extent it is inconsistent with the above [RFC], while partial weight is given to his subsequent statement regarding the claimant's improvement." [*Id.*].

The ALJ, instead, deferred to the opinions of non-examining state agency physicians, Michael Ryan, M.D., and Carol Lemeh, M.D. [Tr. 19]. Dr. Ryan assessed Plaintiff's RFC at the initial level of the administrative proceedings on May 9, 2014, and found that Plaintiff could essentially perform medium work with fewer postural restrictions and no manipulative limitations than incorporated into Plaintiff's RFC. [Tr. 68-69]. Dr. Lemeh evaluated Plaintiff's RFC at the reconsideration level on September 12, 2014, and found that Plaintiff could perform light work with the same postural and manipulative restrictions included in Plaintiff's RFC. [Tr. 102-04]. The ALJ reasoned that while both physicians were experts before the administration and both opinions were well supported, Dr. Lemeh's opinion was more consistent with the medical evidence of record, and therefore, her opinion was given greater weight. [Tr. 19].

The ALJ also gave "partial weight" to the non-examining state agency psychological consultants, Robert de la Torre, Psy.D., and Jenaan Khaleeli, Psy.D., who at the initial and reconsideration levels opined that Plaintiff had mild restrictions in activities of daily living and moderate restrictions in maintaining social functioning, concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration. [Tr. 70-72, 105-07]. The ALJ concluded that the opinions of the non-examining state agency psychological consultants were well supported. [Tr. 20]. Partial weight was also given to examining consultant, Ellen Denny, Ph.D., as the ALJ found her opinion to be consistent with that of Dr. de la Torre and Dr. Khaleeli. [*Id.*]. Dr. Denny concluded that Plaintiff was mildly impaired in her ability to understand,

remember, concentrate, and pay attention, and she was moderately impaired in interacting with others and adapting to change.  [Tr. 475].

The regulations create a presumption in favor of opinions from treating sources as "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  However, a treating source opinion only enjoys controlling weight when it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.  20 C.F.R. §§ 404.1527(c), 416.927(c); *see Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam) (holding that the treating-source rule is not "a procrustean bed, requiring an arbitrary conformity at all times").  When an ALJ does not give a treating source opinion controlling weight, the ALJ must always give "good reasons" for the weight assigned, taking into consideration the length of treatment, frequency of examination, the nature and extent of the treatment relationship, the amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416-27(c)(1)-(6).  The ultimate decision of disability rests with the ALJ.  *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 992 (6th Cir. 2007).

Plaintiff argues that the ALJ did not give good reasons for discounting Dr. Moore's opinions.  Plaintiff suggests that the ALJ dismissed the opinions on the sole basis of Dr. Moore's observation in his latter July 2014 opinion in which Plaintiff's anxiety was noted to have improved with medication.  [Doc. 11 at 18].  The Court, however, does not read the ALJ's decision so

narrowly. While the ALJ noted that Plaintiff showed improvement as indicated in Dr. Moore's July 2014 opinion, and then proceeded to discount his opinions "[i]n light of the claimant's course of treatment," the Court finds that the ALJ discounted Dr. Moore's opinions based on the totality of Plaintiff's treatment as opposed to just her improvement related to her mental limitations.

In reaching this conclusion, the Court observes that prior to weighing the medical opinions of record, the ALJ provided a detailed discussion of Plaintiff's inflammatory bowel disease, degenerative disc disease, and anxiety—impairments that Plaintiff asserts Dr. Moore was intimately familiar with and accordingly weigh in favor of giving greater weight to his opinion.[3] [*See* Doc. 11 at 19]. The ALJ found, however, that treatment for these impairments was generally successful in controlling Plaintiff's symptoms. [Tr. 17-18]. As to Plaintiff's inflammatory bowel disease, while Plaintiff was routinely treated for ulcerative colitis and was even hospitalized in June 2013 due to septic shock,[4] Plaintiff's bowel pattern remained stable with medications thereafter through July 2015 as Plaintiff often presented to Dr. Moore without specific mention of gastrointestinal-related complaints or symptoms other than infrequent mention of diarrhea with occasional blood in her stool. [Tr. 17, 295, 297, 299-300, 302, 304-06, 435-49, 542-45, 698, 701].

---

[3] Plaintiff similarly asserts that Dr. Moore's treating relationship with Plaintiff placed him in the best position to gauge the limiting effects of Plaintiff's carpal tunnel syndrome and migraines. [Doc. 11 at 19]. But as already found by the Court, Plaintiff's carpal tunnel syndrome and migraines were properly found to be nonsevere impairments that did not have a greater effect on Plaintiff's RFC than accounted for by the ALJ.

[4] In June 2013, Plaintiff was admitted to the ICU for apparent septic shock and altered mental status. [Tr. 542-43]. Hospitalization records indicate that the etiology of Plaintiff's condition was unclear but likely attributed to either an adverse reaction to Humira, for which Plaintiff had recently began taking for her ulcerative colitis, or excessive use of Tums as her calcium level was markedly elevated. [*Id.*]. Plaintiff recovered during her hospitalization, and at a follow-up appointment with her treating gastroenterologist, Plaintiff choose to discontinue Humira. [Tr. 297-98].

In other words, Plaintiff did not report excessive diarrhea, bowel urgency, or other disabling symptoms as the result of her impairment. Moreover, Dr. Uzzle noted unremarkable abdominal findings other than nonspecific abdominal tenderness. [Tr. 480].

With regard to Plaintiff's degenerative disc disease, the ALJ acknowledged that Plaintiff had an extensive history of chronic right back pain, complaints of muscle and back spasms, and took Tramadol which offered some pain relief. [Tr. 18, 419, 643]. Despite complaints of pain, the ALJ observed that Plaintiff's medication remained at the same dosage and frequency throughout treatment with Dr. Moore, and Dr. Moore's most recent treatment notes revealed normal examination findings. [Tr. 18, 423-25, 447, 498-99, 698-705]. In addition, on physical examination with Dr. Uzzle, while Plaintiff presented with a poorly functional antalgic gait pattern and some mild limitation in reaching overhead bilaterally, Plaintiff did not require an assistive device, she was able to climb on and off the examination table without difficulty, she had full range of motion throughout her spine and extremities, and straight leg raise testing was negative in the sitting and supine position. [Tr. 18, 480-81]. Moreover, Dr. Uzzle remarked that Plaintiff's "pain behaviors are somewhat exaggerated at times during the clinical exam. . . ." [Tr. 18, 480].

Additionally, the ALJ discussed Plaintiff's psychological symptoms and their effect on her functioning. [Tr. 18-19]. While Plaintiff reported a depressed and anxious mood in April 2014 to consultative examiner Dr. Denny, the ALJ observed that Plaintiff denied any anxiety or depression between October 2013 and June 2014 to Dr. Moore. [Tr. 19, 475, 439, 443, 446, 498]. The ALJ also noted that although Plaintiff alleged a 10 year history of anxiety and depression, she never received any specialized mental health care and treatment was limited to medication management. [Tr. 19, 475, 703]. The Court further observes that by Dr. Moore's own account, Plaintiff's anxiety had improved with medication by July 2014, resulting in only moderate limitations in

16

concentration and social abilities. [Tr. 496]. "[C]ourts generally agree that although the Social Security regulations do not define a 'moderate limitation,' it is commonly defined on agency forms 'as meaning that the individual is still able to function satisfactorily.'" *Ziggas v. Colvin*, No. 1:13-cv-87, 2014 WL 1814019, at *6 (S.D. Ohio May 6, 2014) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006)).

In sum, the Court finds that the ALJ's discussion of the evidence places his subsequent conclusion—that Dr. Moore's opinions were not consistent with Plaintiff's "course of treatment"—into context, and that the ALJ did not discount the entirety of Dr. Moore's assessed limitations on the basis that Plaintiff's anxiety responded well to medication. The ALJ's finding that Dr. Moore's assessed limitations were not supported by the medical evidence, including Dr. Moore's own treatment notes, constitute "good reasons" for discounting his opinion. *See Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes."); *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 927 (E.D. Tenn. 2013) (recognizing the lack of objective medical evidence constitutes "good reason").

Plaintiff further complains that the ALJ erred by relying on the opinions of the non-examining state agency physicians and psychological consultants as their "opinions were provided prior to the submission of all the records, as well as the opinion evidence from Dr. Moore." [Doc. 11 at 21]. However, "[t]here will always be a gap between the time the agency experts review the record and give their opinion with respect to the Listing and the time the hearing decision is issued." *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 2009 WL 233266, at *5 (6th Cir. 2009). Thus, "absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand." *Id.*

Here, the Court finds no error. As to Plaintiff's physical limitations, Dr. Lemeh's September 2014 opinion at the reconsideration level, which opinion received great weight, was rendered after Dr. Moore had issued his opinions. Plaintiff does not cite to any specific evidence that was generated after September 2014 that undermines or conflicts with Dr. Lemeh's opinion. In fact, Dr. Moore only saw Plaintiff two additional occasions thereafter, at which time physical examination findings were largely unremarkable as noted in the ALJ's decisions. [*See* Tr. 17-18]. Similarly, with regard to Plaintiff's mental limitations, Dr. Khaleeli's September 2014 opinion at the reconsideration level was likewise rendered after Dr. Moore issued his. Moreover, the Court notes that Dr. Moore's most recent July 2014 opinion, which assessed moderate limitations in memory and concentration, was given partial weight, as were all the medical opinions of record that opined on Plaintiff's mental abilities. Plaintiff fails to explain how the mental limitations incorporated into his RFC are inconsistent with any of the opinions of record which appear to unanimously assess moderate limitations at worst.

As a final matter, Plaintiff contends that the objective medical evidence of record supports her subjective allegations, and therefore, the ALJ improperly found that Plaintiff was not entirely credible. [Doc. 11 at 20]. Plaintiff avers that this error, in turn, caused the ALJ to incorrectly weigh Dr. Moore's opinions. [*Id.*]. "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Because the medical evidence supports the ALJ's RFC determination, the Court finds that the ALJ did not err in considering Plaintiff's subjective complaints. *See Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 10**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 17**] will be **GRANTED**. The Commissioner's decision will be **AFFIRMED**. The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge